IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN RODGERS,

                Petitioner,                   No. CIV S-01-0975 FCD GGH P

    vs.

CLAUDE E. FINN,

                Respondent.        FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1998 guilty plea for willful infliction of corporal injury (Cal. Penal Code § 273.5), and an enhancement for infliction of great bodily injury (Cal. Penal Code § 12022.7(d)).  Petitioner was sentenced to six years in state prison.

        This action is proceeding on the original petition filed May 21, 2001, which raises the following claims: 1) double jeopardy violation; 2) insufficient evidence; 3) the trial court abused its discretion by considering an incomplete probation report and invalid conviction; 4) ineffective assistance of counsel.

/////

1        On March 29, 2004, the court dismissed this action on grounds that the claims

2 were procedurally defaulted.  On December 16, 2005, the Ninth Circuit Court of Appeals

3 reversed and remanded this matter.  On February 2, 2006, respondent filed briefing requesting

4 that the action be reviewed on substantive grounds.

5        After carefully considering the record, the court recommends that the petition be

6 denied.

7 II. <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

8        The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

9 petition for habeas corpus which was filed after the AEDPA became effective.  <u>Neeley v. Nagle</u>,

10 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

11 AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

12 standards of review to be used by a federal habeas court in assessing a state court's adjudication

13 of a criminal defendant's claims of constitutional error.  <u>Moore v. Calderon</u>, 108 F.3d 261, 263

14 (9th Cir. 1997).

15        In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

16 Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

17 for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

18 between "contrary to" clearly established law as enunciated by the Supreme Court, and an

19 "unreasonable application of" that law.  <u>Id.</u> at 1519.  "Contrary to" clearly established law applies

20 to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

21 Court on a point of law, or (2) if the state court case is materially indistinguishable from a

22 Supreme Court case, i.e., on point factually, yet the legal result is opposite.

23        "Unreasonable application" of established law, on the other hand, applies to

24 mixed questions of law and fact, that is, the application of law to fact where there are no factually

25 on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

26 <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

1   AEDPA standard of review which directs deference to be paid to state court decisions.  While the

2   deference is not blindly automatic, "the most important point is that an *unreasonable* application

3   of federal law is different from an incorrect application of law....[A] federal habeas court may not

4   issue the writ simply because that court concludes in its independent judgment that the relevant

5   state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

6   that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

7   1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

8   objectively unreasonable nature of the state court decision in light of controlling Supreme Court

9   authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

10          The state courts need not have cited to federal authority, or even have indicated

11  awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S.

12  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

13  contrary to, or an unreasonable application of, established Supreme Court authority. Id.  An

14  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

15  occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

16  established Supreme Court authority reviewed must be a pronouncement on constitutional

17  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

18  binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

19          However, where the state courts have not addressed the constitutional issue in

20  dispute in any reasoned opinion, the federal court will independently review the record in

21  adjudication of that issue.  "Independent review of the record is not de novo review of the

22  constitutional issue, but rather, the only method by which we can determine whether a silent state

23  court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

24  2003).

25          In reviewing a state court's summary denial of a habeas petition, this court must

26  "look through" the summary disposition to the last reasoned decision.  See Shackleford v.

1  Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000)(citing Ylst v. Nunnemaker, 501 U.S. 797, 803-

2  04, 111 S.Ct. 2590 (1991)).  In the instant case, the Superior Court issued the only reasoned

3  decision addressing the claims raised in the instant petition.  Respondent's Answer, Exhibit E.

4  Accordingly, the court considers whether the denial of the claims raised in this petition by the

5  Superior Court was an unreasonable application of clearly established Supreme Court authority.

6  III.  Factual Background

7        Petitioner pled no contest and admitted the enhancement.  Therefore, no reporter's

8  transcript exists containing the factual background.  Accordingly, the court will adopt the factual

9  background contained in the probation report:

> The following information was obtained from San Joaquin County
> Sheriff's Office Crime Report 98-08460 and the transcript of the
> Preliminary Examination conducted on May 5, 1998.
>
> On April 19, 1998, at approximately 7:22 p.m., an officer of the
> San Joaquin County Sheriff's Office was dispatched to 9974 South
> McKinely Road, in French Camp, regarding an assault report.
> Upon arrival, the officer made contact with Lillie Rodgers.  She
> had a large amount of blood on her clothing and her face.  Her lips
> and nose were swollen, and her left eye was beginning to swell
> shut.  She said she received her injuries from her husband, whom
> she identified as the defendant.  At this time, she was transported,
> via ambulance, to San Joaquin County General Hospital for
> treatment.
>
> The officer responded to the hospital and met with Lillie.  She said
> that she and the defendant picked up her four daughters from their
> home in Modesto, and drove to the defendant's mother's home in
> Manteca.  While they were driving, the defendant became angry
> because he thought there was someone at the house with the
> children.  He started questioning Lillie about having sex with a
> male subject.  When she denied the accusations, the defendant
> punched her in the face.  He continued to question the girls about
> someone being at their house, which they continued to deny.  Once
> again, the defendant punched Lillie in the face.  When Lillie denied
> having sex with anyone else, the defendant punched her in the
> mouth causing her front tooth to break.  He then pulled into a
> liquor store and told Lillie, "If you love your children, you better
> not get out of the car and show your face."After they left the liquor
> store, they drove to a canal.  The defendant wet his shirt and had
> Lillie wipe her face with it.  They then proceeded to the 9900 block
> of South McKinely Avenue in French Camp.  When the defendant
> exited the car and was out of sight, Lillie and the children ran to a

1
2

> house and called 911.  Subsequently, the defendant was located at
> his mother's house.  He was arrested and transported to the county
> jail.

3  Respondent's Answer, Exhibit B.

4  IV.  <u>Discussion</u>

5          A.  <u>Claim 1: Double Jeopardy/Insufficient Evidence</u>

6          In claim one, petitioner argues that there was insufficient evidence to support his

7  conviction of the great bodily injury enhancement.

8          "When a criminal defendant has solemnly admitted in open court that he is in fact

9  guilty of the offense with which he is charged, he may not thereafter raise independent claims

10 relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty

11 plea."  <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608 (1973).  Aside from a

12 challenge to the voluntary and intelligent character of the plea itself, the entry of a guilty plea

13 generally forecloses all collateral attacks with the exception of jurisdictional claims and claims

14 directly related to the voluntariness of the plea.  <u>United States v. Broce</u>, 488 U.S. 563, 574, 109

15 S.Ct. 757, 765 (1988).  Petitioner's claim alleging insufficient evidence alleges a deprivation of

16 his constitutional rights that occurred prior to his guilty plea and does not attack the voluntary

17 and intelligent character of the plea.  Accordingly, the court will not consider this claim.

18         Petitioner next argues that his sentence for both willful infliction of corporal

19 injury and the great bodily injury enhancement violate double jeopardy because they constitute

20 the "same offense."  When a defendant's double jeopardy claim depends on an undeveloped

21 factual record, it is waived by a guilty plea.  <u>United States v. Broce</u>, 488 U.S. 563, 575, 109 S. Ct.

22 757, 765 (1989).  A guilty plea does not waive a claim that the charge, judged on its face, is one

23 which the state may not constitutionally prosecute.  <u>Id.</u>  Petitioner's double jeopardy is not

24 waived because it is based on a claim that the charges, judged on their face, should not have been

25 constitutionally prosecuted.

26 /////

1          The Fifth Amendment provides that no person shall "be subject for the same

2  offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  In determining

3  whether to characterize two charges as the "same offense" triggering Fifth Amendment double

4  jeopardy, or as two separate offenses, courts use the definition set forth in <u>Blockburger v. United</u>

5  <u>States</u>: "the test to be applied...is whether such provision requires proof of a fact which the other

6  one does not."  284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).  Where each offense requires proof

7  of at least one unique element, there are two offenses, but where all the elements of one crime are

8  included in the definition of another crime, the two charges represent the "same offense" under

9  the Double Jeopardy Clause.

10          Under California law, serious bodily injury is not an element of inflicting corporal

11  injury.  <u>People v. Chaffer</u>, 111 Cal.App.4th 1037, 1043-44, 4 Cal.Rptr.3d 441, 445-456 (2003).

12  For that reason, petitioner's sentence for both offenses does not violate the Fifth Amendment

13  prohibition against double jeopardy.

14          The denial of these claims by the Superior Court was not an unreasonable

15  application of clearly established Supreme Court authority.  Accordingly, these claims should be

16  denied.

17          B.  <u>Claim 2: Probation Report</u>

18          Petitioner argues that the trial court sentenced him based on a probation report

19  that contained errors.  In particular, petitioner argues that the probation report stated that 20 of

20  his 29 misdemeanor convictions were "unknown" and "uninvestigated."  Petitioner also argues

21  that the probation report included a felony conviction that had been reversed.  These claims

22  allege a violation of petitioner's rights following the entry of his plea.  Accordingly, the court

23  may consider these claims.

24          In essence, petitioner is claiming a state law sentencing error.  "Absent a showing

25  of fundamental unfairness, a state court's misapplication of its own sentencing laws does not

26  justify federal habeas relief.'"  <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir. 1994).

1    In denying these claims the Superior Court found no error:

2    Petitioner also contends the court abused its discretion by denying probation based
     on an incorrect and/or incomplete probation report.  The probation report listed 29
3    misdemeanor convictions, 20 of which, petitioner contends, were listed as being
     "unknown."  The types and dispositions of the 29 misdemeanor convictions were
4    indicated in the probation report.  Only the names of the arresting agencies were
     indicated as unknown.  The names of the involved police agencies not information
5    necessary for a proper consideration of a grant of probation.

6    Petitioner also contends the probation report erroneously included a felony
     conviction that had been reversed.  The probation report indicated petitioner had
7    three prior felony convictions, including a 1990 felony drunk driving conviction.
     That conviction was reversed in May 1991, a fact not reflected in the probation
8    report.  However, the sentencing transcript clearly reflects the court based the
     denial of probation on several factor[s], including the violent nature of petitioner's
9    past offenses, the infliction of great bodily injury during the current offense, the
     fact that petitioner had already served a prison term, and the fact that he was on
10   probation when he committed the current offense.  There is no indication the court
     placed any significant reliance on the reversed prior felony conviction or the
11   number of prior felony convictions.  Rather, the court relied on petitioner's history
     of violence which was amply demonstrated by the other information contained in
12   the probation report and the diagnostic study.

13   Respondent's Exhibit E.

14           Based on the reasoning of the Superior Court, this court finds no violation of

15   fundamental fairness.

16           The denial of these claims by the Superior Court was not an unreasonable

17   application of clearly established Supreme Court authority.  Accordingly, these claims should be

18   denied.

19           C.  Ineffective Assistance of Counsel

20               *Standards for Ineffective Assistance of Counsel*

21           The test for demonstrating ineffective assistance of counsel is set forth in

22   Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, a petitioner must show

23   that, considering all the circumstances, counsel's performance fell below an objective standard of

24   reasonableness.  Strickland, 466 U.S. at 688, 104 S. Ct. at 2065.  To this end, the petitioner must

25   identify the acts or omissions that are alleged not to have been the result of reasonable

26   professional judgment.  Id. at 690, 104 S. Ct. at 2066.  The federal court must then determine

7

1   whether in light of all the circumstances, the identified acts or omissions were outside the wide

2   range of professional competent assistance.  Id., 104 S. Ct. at 2066.  "We strongly presume that

3   counsel's conduct was within the wide range of reasonable assistance, and that he exercised

4   acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d

5   695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

6           Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

7   693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for

8   counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

9   694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine

10   confidence in the outcome."  Id., 104 S. Ct. at 2068.

11           In extraordinary cases, ineffective assistance of counsel claims are evaluated

12   based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93, 120 S. Ct.

13   1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

14           The Supreme Court has recently emphasized the importance of giving deference

15   to trial counsel's decisions, especially in the AEDPA context:

16           In Strickland we said that "[j]udicial scrutiny of a counsel's
            performance must be highly deferential" and that "every effort
17           [must] be made to eliminate the distorting effects of hindsight, to
            reconstruct the circumstances of counsel's challenged conduct, and
18           to evaluate the conduct from counsel's perspective at the time."
            466 U.S., at 689, 104 S.Ct. 2052.  Thus, even when a court is
19           presented with an ineffective-assistance claim not subject to §
            2254(d)(1) deference, a [petitioner] must overcome the
20           "presumption that, under the circumstances, the challenged action
            'might be considered sound trial strategy.'"  Ibid. (quoting Michel
21           v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

22           For [petitioner] to succeed, however, he must do more than show
            that he would have satisfied Strickland's test if his claim were
23           being analyzed in the first instance, because under § 2254(d)(1), it
            is not enough to convince a federal habeas court that, in its
24           independent judgment, the state-court decision applied Strickland
            incorrectly.  See Williams, supra, at 411, 65 S. Ct. 363.  Rather, he
25           must show that the [ ]Court of Appeals applied Strickland to the
            facts of his case in an objectively unreasonable manner.

26

8

1  Bell v. Cone, 535 U.S. 685, 698-699, 122 S. Ct. 1843,1852 (2002).

2  *Analysis*

3  Petitioner first argues that his counsel was ineffective for failing to review the

4  probation report prior to sentencing.  This claim alleges a violation of petitioner's rights

5  following the entry of his plea.  Accordingly, the court may consider this claim.

6  At the sentencing hearing, petitioner's counsel stated that he had seen the

7  probation report but that he did not have it with him: "That's okay.  I think I have seen it actually.

8  I just don't have it with me."  Respondent's Exhibit I, p. 3.  Petitioner's claim that his counsel

9  failed to review the probation report prior to sentencing is without merit.

10  Petitioner next argues that his counsel was ineffective for failing to have the

11  investigator speak to his mother.  Petitioner argues that if the investigator had spoken to his

12  mother he would have discovered that petitioner's competency was questionable and that

13  petitioner's alibi may have been a valid defense.  Petitioner's claim alleging that his counsel

14  failed to investigate his alibi defense alleges a violation of his constitutional rights that occurred

15  prior to the entry of his plea and does not implicate the voluntariness of his plea.  United States v.

16  Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance claims are waived).

17  Accordingly, the court will not consider this claim.

18  Petitioner's claim alleging that counsel failed to investigate his competency

19  implicates the voluntariness of his plea.  Accordingly, the court considers this claim.  In denying

20  this claim, the Superior Court stated, "Petitioner' [sic] was evaluated by a clinical psychologist

21  at his attorney's request shortly before his change of plea.  Although a determination of

22  competency was not the purpose of the evaluation, it is clear petitioner was competent at the time

23  of the evaluation."  Respondent's Exhibit E.

24  Attached to the petition as G is the report prepared by Clinical Psychologist John

25  Chellson on July 28, 1998, at the request of petitioner's counsel.  This report, based on Dr.

26  Chellson's interview of petitioner, stated that petitioner merited:

1  a diagnosis of major depression or bipolar disorder along with alcohol abuse and
2  dependence, methamphetamine abuse and status post head injury.  I did not see
   any clear evidence of an underlying schizophrenic spectrum disorder. When this
3  was first diagnosed, he was reporting experiencing hallucinations and was
   delusional, but this may have been an artifact of amphetamine abuse or
4  intoxication.  I see no indication of affective blunting or constriction, anhedonia or
   an underlying formal thought disorder, which would be essential components of
5  this disorder.

6  Petition, Exhibit G.

7          While Dr. Chellson's report indicates that petitioner was mentally ill, Dr.

8  Chellson did not find that petitioner was incompetent.  Dr. Chellson's observation that petitioner

9  was "certainly manipulative, is engaging in conscious impression management and is behaving in

10  a goal oriented and purposeful manner" suggests that petitioner understood the criminal

11  proceedings.  The court has also reviewed the relevant transcripts and finds no evidence to

12  support a claim by petitioner that he was not competent.

13          Because petitioner's counsel had petitioner evaluated by a clinical psychologist

14  who did not find petitioner incompetent, the court does not find that counsel was ineffective in

15  his investigation of petitioner's mental state.  Accordingly, this claim is without merit.

16          Petitioner also argues that his counsel failed to investigate his defense of

17  imperfect self defense.  This claim alleges a violation of petitioner's rights prior to the entry of

18  his plea that does not implicate the voluntariness of his plea.  Accordingly, the court will not

19  address this claim.

20          Petitioner also argues that counsel failed to investigate information in the

21  probation report.  Petitioner argues that had counsel investigated his criminal background, he

22  would have discovered that his 1991 convictions for driving under the influence and resisting a

23  peace officer had been reversed.  Petitioner also argues that his counsel should have investigated

24  the unknown misdemeanors mentioned in the probation report.  These claims allege a violation

25  of petitioner's rights following the entry of his plea.  Accordingly, the court may consider these

26  claims.

1    As discussed above, petitioner's claim challenging the validity of his prior

2  misdemeanor convictions is without merit.  Only the names of the arresting agencies of 20 of his

3  prior misdemeanor convictions were unknown.  This information had no impact on the court's

4  consideration of these prior convictions at sentencing.  Accordingly, counsel's failure to

5  investigate the names of the arresting agencies did not prejudice petitioner.

6    Petitioner's convictions for driving under the influence and resisting arrest had

7  been reversed.  Petition, Exhibit K (order by California Court of Appeal reversing convictions).

8  However, as discussed above, it is unlikely that petitioner would have received a lighter sentence

9  had the trial court been aware of the reversal of these convictions.  As found by the Superior

10  Court, the sentencing transcript clearly reflected that the trial court found petitioner ineligible for

11  probation based on several factors including the violent nature of his past offenses, the infliction

12  of great bodily injury, the fact that he had served a prior prison term and the fact that he was on

13  probation when he committed the current offense.  Based on these factors, the court does not find

14  that petitioner was prejudiced by counsel's failure to inform the trial court of the reversal of these

15  convictions.

16    Petitioner also argues that his counsel had a conflict of interest because the Public

17  Defender's Office, by whom counsel was employed, was involved in petitioner's child custody

18  case.  It appears from the record that petitioner knew that the Public Defender's Office was

19  involved in his child custody case at the time he plead guilty.  Therefore, petitioner's claim is

20  waived by the guilty plea unless he can demonstrate that this alleged conflict somehow rendered

21  his plea involuntary.  Other than the conclusory allegation of the alleged conflict, petitioner does

22  not allege that his plea was involuntary as a result of the involvement of the Public Defender's

23  Office in his child custody case.  Accordingly, this claim is without merit.

24    Petitioner argues that counsel was ineffective for failing to file a notice of appeal.

25  This claim alleges a violation of petitioner's constitutional rights following the entry of his plea.

26  Accordingly, the court may consider this claim.

11

1       In order to appeal from his guilty plea, petitioner had to request and obtain from

2  the superior court a certificate of probable cause for claims arising prior to the entry of the plea

3  that did not affect the plea's validity.  Cal. Penal Code § 1237.5; Cal. Rules of Court, rule 30(b).

4  Petitioner was not required to obtain a certificate of probable cause for claims arising after the

5  entry of the plea that did not affect the plea's validity.  Cal. Rule of Court, rule 30(b).

6       Petitioner claims, and respondent does not dispute, that petitioner's counsel failed

7  to file the notice of appeal as requested by petitioner.  Answer, Exhibit J.  Petitioner himself went

8  on to file a notice of appeal and a request for a certificate of probable cause.  Respondent's

9  Answer, Exhibit K.  The Superior Court denied this request and marked the appeal "inoperative."

10  Id.

11       In Roe v. Flores-Ortega, 528 U.S. 470, 120 S. Ct. 1029 (2000), the United States

12  Supreme Court held that a lawyer who disregards a defendant's specific instruction to file a

13  notice of appeal acts in a manner that is professionally unreasonable, id. at 477, 120 S. Ct. at

14  1035, and prejudice will be presumed where counsel's error leads to the "forfeiture of a

15  proceeding itself."  Id. at 483-484, 120 S. Ct. at 1038-1039.  In the instant case, petitioner claims

16  that counsel disregarded his specific instructions to file an appeal.  However, counsel's failure to

17  file the appeal did not lead to a forfeiture of the proceeding itself because petitioner pursued the

18  appeal.

19       Because petitioner filed his appeal in pro per, he would have to demonstrate that

20  he was prejudiced as a result of not being represented by counsel in these proceedings.  Id. at

21  481-82, 120 S. Ct. at 1036-1037.  This he has not done.  Petitioner does not allege, for example,

22  that the Superior Court would have granted his request for a certificate of probable cause had

23  counsel filed the request.  Because petitioner has not met his burden of demonstrating prejudice,

24  this claim is without merit.

25       Finally, petitioner argues that counsel failed to investigate factors in mitigation,

26  which he apparently claims would have resulted in a lighter sentence.  This claim alleges a

1 violation of petitioner's rights after the entry of his guilty plea.  Accordingly, the court may

2 consider this claim.

3          Petitioner alleges that his counsel failed to investigate "two very obvious and

4 important excuses for his actions."  Petitioner claims that the victim told petitioner that she was

5 going to "kill us all."  Petitioner also argues that he had a long history of mental and physical

6 disabilities which impaired his ability to function.

7          As discussed above, counsel had petitioner examined by a clinical psychologist,

8 Dr. Chellsen.  Petition, Exhibit G.  In his report, Dr. Chellsen discussed petitioner's mental and

9 physical "disabilities."  Id.  Counsel presented this report to the court at sentencing.  Answer,

10 Exhibit I, p. 2.  Accordingly, the court does not find that counsel failed to adequately investigate

11 petitioner's physical and mental disabilities for purposes of sentencing.

12          Petitioner is apparently claiming that his conduct was somehow less culpable

13 because the victim stated that she was going to "kill us all."  As discussed above, the trial court

14 found petitioner ineligible for probation based on several factors including his prior prison term,

15 the violent nature of his past offenses, the infliction of great bodily injury and the fact that he was

16 on probation when he committed the current offense.  It is not likely that petitioner would have

17 received a lighter sentence had counsel presented evidence that the victim had stated that she was

18 going to "kill us all."

19          The denial of these claims by the Superior Court was not an unreasonable

20 application of clearly established Supreme Court authority.  Accordingly, these claims should be

21 denied.

22          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

23 a writ of habeas corpus be denied.

24          These findings and recommendations are submitted to the United States District

25 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

26 days after being served with these findings and recommendations, any party may file written

13

1  objections with the court and serve a copy on all parties.  Such a document should be captioned

2  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3  shall be served and filed within ten days after service of the objections.  The parties are advised

4  that failure to file objections within the specified time may waive the right to appeal the District

5  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6  DATED: 11/1/06

7                                                                /s/ Gregory G. Hollows

8                                                         _____
                                                          GREGORY G. HOLLOWS
9                                                         UNITED STATES MAGISTRATE JUDGE

10
   ggh:kj
11 rod975.157

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26